| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Law Offices Of Hagen & Hagen<br>Jeffrey J Hagen - SBN 143754<br>(818) 501-6161<br>4559 San Blas Avenue<br>Woodland Hills, California 91364<br>jeff@hagenhagenlaw.com<br>www.hagenhagenlaw.com<br><br>☐ Individual appearing without attorney<br>☒ Attorney for Debtor | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

In re:

Jeffrey Alan Scott and Sonya Scott,

Debtor(s)

CASE NO.: 2:95-bk-11691-BR
CHAPTER: 7

**SUMMARY OF AMENDED SCHEDULES,
MASTER MAILING LIST,
AND/OR STATEMENTS
[LBR 1007-1(c)]**

A filing fee is required to amend Schedules D or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov). A supplemental master mailing list (do not repeat any creditors on the original) is required as an attachment if creditors are being added to the Schedule D or E/F.
Are one or more creditors being added?  ☐ Yes  ☒ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☒ Schedule A/B    ☐ Schedule C    ☐ Schedule D    ☐ Schedule E/F    ☐ Schedule G
☐ Schedule H      ☐ Schedule I    ☐ Schedule J    ☐ Schedule J-2    ☐ Statement of Financial Affairs
☐ Statement About Your Social Security Numbers    ☐ Statement of Intention    ☐ Master Mailing List
☐ Other (specify) _____

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and or statements are true and correct.

Date: 06/05/2021

_____
Debtor 1 Signature

_____
Debtor 2 (Joint Debtor) Signature (if applicable)

**NOTE**: It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

*December 2015*                              Page 1                    F 1007-1.1.AMENDED.SUMMARY

Jeffrey Alan Scott and Sonya Scott
2:95-bk-11691-BR
Amendment Of Schedule B - Personal Property

Among the assets scheduled by Debtors Jeffrey A. Scott and Sonya Scott in their 1995 bankruptcy case, at Schedule B - Personal Property, at item 21, Patents, copyrights, and other intellectual property, were the following:

> Several unfinished screen plays, film & TV developments, value: $0.00.

Debtors reopened their 1995 bankruptcy case, originally assigned to the Honorable Alan M. Ahart but reassigned upon reopening to the Honorable Barry Russell, pursuant to an order entered 06/02/2021, docket number 171, and accordingly hereby amend their Schedule B - Personal Property at item 21, Patents, copyrights, and other intellectual property, to also include the following:

> In or about October 1983 Marvel Productions, Ltd. obtained Debtor Jeffrey Scott's services to create a series production bible and write scripts for a new Muppet-based television show, depicting the Muppet characters as youngsters. Although Marvel proposed draft written agreements, Debtor Jeffrey Scott never accepted them because he disagreed with certain proposed terms and they were never fully executed. However, throughout the show's initial run, the parties operated pursuant to material terms reflected in the unsigned written agreement and treated those terms as valid and enforceable.
>
> Pursuant to the parties' agreement, which was partially oral and partially reflected in portions of the unsigned agreements, and which is implied from the parties' three-year performance of its terms, Marvel initially paid Debtor Jeffrey Scott $12,000 per script he wrote, which increased to $13,500 per script in 1986, and gave him the right to write the script of each new episode produced, and agreed to pay him, and did pay him, a $3,500 royalty for each new episode produced, in perpetuity. Marvel also agreed to give Scott a 'Developed for Television by' credit on each episode, which it did. While Marvel kept those promises, its successor-in-interest, the Walt Disney Company has not.

The following are the Muppet Babies Series scripts that Debtor Jeffrey Scott wrote between 1983 and 1986:

Out-Of-This-World History
The Great Cookie Robbery
Fozzie's Last Laugh
Piggy's Hyper-Activity Book
Once Upon An Egg Timer
Bad Luck Bear
Muppet Goose
Fine Feathered Enemies
Around The Nursery In 80 Days
Treasure Attic
Scooter's Uncommon Cold
The Daily Muppet
Fozzie's Family Tree
Kermit Goes To Washington
The Muppet Broadcasting Company
Muppets In Toyland
The Weirdo Zone
The Best Friend I Never Had
Pigerella
The Muppet Museum Of Art
The Great Muppet Cartoon Show
What's New At The Zoo?
Musical Muppets
I Want My Muppet TV!
Snow White And The Seven Muppets
Good, Clean Fun
From A Galaxy Far, Far Away
Fun Park Fantasies
Gonzo's Video Show
Close Encounters Of The Frog Kind
What Do You Want To Be When You Grow Up?
8 Take Away 1 Equals Panic!
The Case Of The Missing Chicken
Scooter's Hidden Talen
Raiders Of The Lost Muppet
Dental Hijinks
Who's Afraid Of The Big, Bad Dark?
Noisy Neighbors

Although written between 1983 and 1986, Debtor Jeffrey Scott did not apply to register the scripts with the United States Copyright Office until 09/29/2020 through 10/01/2020.

Debtor Jeffrey Scott communicated with Marvel in approximately 1989 and 1990 with respect to his writing two additional episodes of Muppet Babies, which were covered by a fully executed agreement between Marvel and Jeffrey Scott Productions, Inc. dated 05/10/1990, including transfer of copyrights for those two episodic scripts only.

Debtor Jeffrey Scott also communicated with Marvel in approximately 11/1989 regarding a proposed 'Muppet Kids' project and was told by Marvel that it had no interest in pursuing such a project.

By the 01/20/1995 date of bankruptcy, Debtors had had no communication with Marvel about Muppet Babies in over five years. Therefore Debtors understood that all interests in the Muppet Babies concept were defunct when they filed their 1995 bankruptcy case.

To be clear, the assets that therefore existed as of the 01/20/1995 date of bankruptcy were the following:

1. Then-unregistered copyright in the Muppet Babies Series Bible written by Debtor Jeffrey Scott between 1983 and 1984;

2. Then-unregistered copyrights in the 38 individual Muppet Babies episodes written by Debtor Jeffrey Scott between 1983 and 1986;

3. A 1983 agreement, partly oral, and partly implied, whereby Marvel agreed to: (1) pay Debtor Jeffrey Scott's long-defunct loan out services corporation, Jeffrey Scott Productions, Inc., a California corporation, a $3,500.00 royalty on every episode of Muppet Babies produced, and (2) give Debtor Jeffrey Scott the opportunity to write each new episode produced for a fee of $12,000.00 for each half hour. In 1986, Marvel and Debtor Jeffrey Scott agreed to increase the fee to $13,500.00 per half hour.

In November 2014, Debtor Jeffrey Scott proposed to Lisa Henson, the president of the Jim Henson Company, that Disney, having acquired Marvel in 2004, produce new Muppet Babies shows, and asked her who at Disney to talk to about his idea.

Ms. Henson put Scott in contact with Debbie McClellan, a then vice-president at Disney's The Muppets Studio. Ms. McClellan told Scott that Disney was planning other Muppets projects and to re-release the Muppet Babies series, and expressed interest in producing new episodes of Muppet Babies.

In early 2016, Scott met with Disney executives Joe D'Ambrosia and Alyssa Cooper Sapire, and gave them his ideas for a Muppet Babies reboot. In addition to written ideas that Debtor Jeffrey Scott had already provided to them at their request, the Disney executives asked Debtor Jeffrey Scott to send them some of his Muppet Babies scripts, which he did. Debtor Jeffrey Scott's ideas, which he also gave to Disney in a 'pitch' document he sent on March 4, 2016, and which Disney used in the new episodes, included making the nursery a big warm room in a charming old house, furnished with art supplies, books, a table, a play area, and other things; adding an outdoor play area with play equipment and other elements; making the nanny character younger; structuring episodes around the Muppet Babies encountering problems in the real world and using their imaginations to explore, amplify, and resolve them; and others. At the early 2016 meeting, Debtor Jeffrey Scott also suggested having the nanny character's socks change in different episodes. Disney used that idea too.

On January 31, 2020, the parties entered into a tolling agreement tolling all statutes of limitations applicable to Scott's claims herein. The tolling agreement terminated on September 4, 2020. The tolling of all applicable statutes of limitations then continued while a lawsuit that Debtor Jeffrey Scott filed in the United States District Court for the Central District of California.

Disney continues to fail and refuse to compensate Debtor Scott and to accord him the 'Developed For Television By' credit that Marvel promised him.

Disney began airing new Muppet Babies episodes in 03/2018, from which Debtor Jeffrey Scott learned that Disney had interpolated his series bible and elements of episodes he wrote into the series without offering him the opportunity to write the new episodes or paying him a royalty.

On or about 10/28/2019 the United States Copyright Office issued to Debtor Jeffrey Scott a Certificate Of Copyright, registration number Txu-2-163-328, for The Muppet Babies Production Bible.

As noted above, on or about 10/22/2020, Debtor Jeffrey Scott initiated suit against The Walt Disney Company, a Delaware corporation, and Does 1 through 10, inclusive, in the United States District for the Central District Of California, Western Division, for copyright infringement, breach of contract, idea misappropriation, and fraud. Case number 2:20-cv-09709 was assigned. Debtor Jeffrey Scott is represented in the suit by Stephen D. Rothschild, Esq. Of King, Holmes, Paterno & Soriano, LLP, (310) 282-8989, 1900 Avenue Of The Stars, Twenty-Fifth Floor, Los Angeles, California 90067, fax: (310) 282-8903, srothschild@khpslaw.com.

On or about 03/30/2021 District Court Judge Stanley Blumenfeld granted Disney's motion to dismiss Debtor Jeffrey Scott's copyright infringement claim without prejudice because the series bible and episodes he wrote were not described in his 2003 bankruptcy schedules and declined to exercise ancillary jurisdiction over state law claims, i.e., breach of contract, breach of implied contract, and fraud, concerning the agreement between Debtor Jeffrey Scott and Marvel pursuant to which Debtor Jeffrey Scott wrote that material so those claims were dismissed without prejudice.

On or about 04/06/2021, Debtor Jeffrey Scott initiated suit against The Walt Disney Company, a Delaware corporation in Los Angeles County Superior Court for breach of contract, breach of implied contract (idea misappropriation) and fraud. Case number 21STCV13067 was assigned. Debtor Jeffrey Scott is represented by Stephen D. Rothschild of King, Holmes Paterno & Soriano, LLP in this case as well. Debtor Jeffrey Scott asserts that Disney has breached the agreement by (1) failing and refusing to pay Debtor Jeffrey Scott the $3,500 royalty due him for every episode of Muppet Babies produced for the reboot, (2) failing and refusing to offer Scott the opportunity to write the scripts for the Muppet Babies reboot, (3) failing to pay Scott his $13,500 fee for those episodes, and (4) failing to give Scott his 'Developed For Television By' credit. Debtor Jeffrey Scott asserts that as a direct and proximate result of

Disney's breaches of the Agreement, Debtor Jeffrey Scott has been damaged in the amount of in excess of $17,000 per episode of the reboot produced, in an amount to be proved at trial, plus interest. Debtor Jeffrey Scott is informed and believes that Disney has produced and released more than 53 episodes to date, and continues to produce additional episodes without according Debtor Jeffrey Scott the opportunity to write them or paying the royalties to which he is entitled under the Agreement, and without according Debtor Jeffrey Scott the 'Developed For Television By' credit to which he is entitled, so that Debtor Jeffrey Scott's damages to date exceed $901,000, plus interest at the legal rate, for shows released to date, additional damages to be proved at trial, plus interest, for shows produced between the filing of this complaint and trial, including additional damages to be proved at trial, plus interest, for the loss of the 'Developed For Television By' credit to which Debtor Jeffrey Scott is entitled.

Debtor Jeffrey Scott's Superior Court complaint further asserts that when Debtor Jeffrey Scott submitted his ideas for elements of a Muppet Babies reboot to Disney in 2016, and when Disney solicited additional ideas from Debtor Jeffrey Scott, he and Disney entered into an implied in fact contract whereby Disney agreed to pay Debtor Jeffrey Scott for the appropriation and use of his ideas for elements of the show.

Debtor Jeffrey Scott, an experienced writer whom Disney knew had a history of being paid for his material, submitted his ideas to Disney at Disney's request.

Debtor Jeffrey Scott received representations and warranties, implied and express, that Disney would not exploit his ideas without compensating him for them, including monetary compensation and a screen credit reflecting his contributions to the Muppet Babies reboot.

Debtor Jeffrey Scott performed all of his obligations under the Agreement except those that Disney waived or made it impossible to perform.

Disney breached its obligations to Debtor Jeffrey Scott under the implied agreement by interpolating his ideas into the reboot without compensating him or giving him a screen credit.

As a proximate result of Disney's breach of its implied in fact contract to compensate and credit Debtor Jeffrey Scott, Debtor Jeffrey Scott has been damaged in an amount according to proof at time of trial, plus interest at the legal rate.

Debtor Jeffrey Scott is informed and believes that, when Disney executives Mr. D'Ambrosia and Ms. Sapire solicited Debtor Jeffrey Scott's ideas for a Muppet Babies reboot, they and their superiors at Disney knew, and concealed from Debtor Jeffrey Scott, that Disney had assembled or was assembling a production team for the reboot, and that they and their superiors had no intention of offering Debtor Jeffrey Scott an opportunity to work on the reboot or to pay him for his ideas, which they intended to use without complying with their obligations under the parties' implied agreement.

Debtor Jeffrey Scott, when the Disney executives falsely represented that Disney would pay him for his ideas for elements of the reboot and consider offering him an opportunity to work on the reboot in good faith, was ignorant of the falsity of Disney's misrepresentations and believed them to be true.

Debtor Jeffrey Scott reasonably relied on Disney's misrepresentations alleged herein, based upon which Debtor Jeffrey Scott was induced to and did provide his ideas for the reboot to Disney. Debtor Jeffrey Scott's reliance was reasonable because the misrepresentations were made by Disney executives, Disney is in the business of producing television programs and other entertainment projects and regularly compensates persons from whom it accepts creative contributions to such programs and projects, and because Disney's predecessor-in-interest, Marvel, had honored its obligations to Debtor Jeffrey Scott.

As a proximate result of Disney's fraud alleged herein, Debtor Jeffrey Scott has been damaged in an amount according to proof at time of trial, plus interest at the legal rate.

The aforementioned conduct of Disney constituted intentional misrepresentations, deceits, and concealment of material fact known to Disney with the intention on Disney's part to thereby deprive Debtor Jeffrey Scott of

property or legal rights or otherwise to cause injury, and was despicable conduct that subjected Debtor Jeffrey Scott to cruel and unjust hardship in conscious disregard of Debtor Jeffrey Scott's rights, so as to justify an award of exemplary and punitive damages.

Given that at the time Debtors filed their bankruptcy case, 01/20/1995, the Muppet Babies had ceased production years earlier, with no prospect of further performance of the agreement or exploitation of the bible and scripts, and by 1990 Marvel had advised Debtor Jeffrey Scott that it had no interest in pursuing similar projects involving the material, and given that Disney's breach of contract and idea misappropriation claims did not arise, and are based on acts and transactions that did not occur, until well after Debtors' bankruptcy filings and were therefore not bankruptcy assets, they value their interest in the then-unregistered copyright in the Muppet Babies Series Bible, the then-unregistered copyrights in the 38 individual Muppet Babies episodes, and the 1983 agreement, partly oral, and partly implied, whereby Marvel agreed to: (1) pay Debtor Jeffrey Scott's now-long-defunct loan out services corporation, Jeffrey Scott Productions, Inc., a California corporation, a $3,500.00 royalty on every episode of Muppet Babies produced, and (2) give Debtor Jeffrey Scott the opportunity to write each new episode produced for a fee of $13,500.00 per half hour, at $0.00.

It should also be noted that Debtors filed a Chapter 7 on 09/26/2003, case number 1:03-bk-17981-KL. Debtors were represented in their Chapter 7 case by Law Offices Of Hagen & Hagen by Jeffrey Hagen, Esq. Nancy Zamora was the duly appointed Chapter 7 Trustee of Debtors' case. Trustee Zamora filed her report of no assets with the Clerk of the Court on 11/17/2003, docket number 28. The Clerk of the Court issued Debtors their discharge on 01/06/2004, docket number 29. The Clerk of the Court closed Debtors' case on 01/22/2004, docket number 31. In the 1:03-bk-17981-KL case, Debtors listed on their Schedule B: Personal Property the following assets:

Item 15, Accounts Receivable:

Debtor Jeffrey A. Scott receives residuals from past acting and writing projects. Debtor Jeffrey A. Scott received approximately $4,500 in calendar 2002, but nothing so far in 2003. Debtors anticipate that

residuals in 2003 and in future years will be under $50 per year (subject to exemption).

Debtor Jeffrey A. Scott is owed $2,000 gross, or $1,800 net of agent's fees, from Carlton TV, Ltd. of Nottingham, England for writing a short script (subject to exemption).

Debtor Jeffrey A. Scott is owed $5,000 from Trainingscape.com, Suite 270, 701 Palomar Airport Road, Carlsbad 92009 for work performed in 2001 (likely uncollectible).

Item 21, Patents, copyrights, and other intellectual property:

Debtor has written the following:

a. How To Write For Animation, published in 0602. Debtor is entitled to a 10% hardback royalty and 7% paperback royalty. Sales have been weak and were insufficient to recoup advances received.
b. Eight screenplays, three of which are co-owned with others. All have been marked for sale between 1977 and 2003 without success;
c. Twenty-five television series ideas (fourteen of which are co-owned with others). All have marked for sale between 1980 and 2003 without success;
d. Four toy ideas, all co-owned with others. All have been marketed for sale between 2001 and 2003 without success.

Debtors have accordingly reopened their 1:03-bk-17981-KL case, now assigned to the Honorable Maureen Tighe, pursuant to an order entered 05/11/2021, docket number 35, and amended their Schedule B: Personal Property on 05/17/2021, docket number 37, to include the same assets they are more fully scheduling here. The United States Trustee has re-appointed Nancy Zamora as Chapter 7 Trustee of the 1:03-bk-17981-MT case.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Law Offices Of Hagen & Hagen, 4559 San Blas Avenue, Woodland Hills, California 91364

A true and correct copy of the foregoing document entitled (*specify*): **SUMMARY OF AMENDED SCHEDULES, MASTER MAILING LIST, AND/OR STATEMENTS [LBR 1007-1(c)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/05/2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On (*date*) **06/05/2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/05/2021 | Jeffrey J Hagen | *[signature]* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

December 2015                                Page 2                         F 1007-1.1.AMENDED.SUMMARY

## SECTION I - TO BE SERVED BY THE COURT VIA NEF

**Chapter 7 Trustee:**

Was Lawrence A. Diamant...New Trustee To Be Assigned Now That Case Has Been Reopened

**United States Trustee:**

United States Trustee (LA)   ustpregion16.la.ecf@usdoj.gov

**Requests For Special Notice:**

None

**Requests For Courtesy Notification Of Electronic Filing:**

None

## SECTION II - SERVED BY UNITED STATES MAIL OR OVERNIGHT MAIL

**Debtors:**

Mr. Jeffrey A. Scott
Ms. Sonya Scott
2340 Fox Hills Drive
Los Angeles, California   90064